UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


PATRICK LYNN RUSSELL                    CIVIL ACTION NO. 13-cv-3248

VERSUS                                  JUDGE HICKS

MS. EVANS, ET AL                        MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

### Introduction

Patrick Lynn Russell is a self-represented former inmate of the Caddo Correctional Center ("CCC") who alleges that several law enforcement officers illegally forced him to provide fingerprints and a DNA sample. He prays for monetary damages, a court investigation, and that the named defendants sign affidavits stating that the Dallas police officer who came to obtain the evidence did so with a "fake warrant" and that the evidence was taken illegally.

Defendant Esteban Montenegro, a Dallas homicide detective, has filed a Motion for Summary Judgment (Doc. 47). Cory Newton, who was then employed at CCC, has filed a separate Motion for Summary Judgment (Doc. 49). Finally, Caddo Parish Sheriff Steve Prator and Gloria Evans, one of his investigators, filed their own Motion for Summary Judgment (Doc. 50). The motions, which are not opposed, persuasively attack the claims on the merits and assert qualified immunity defenses. It is nonetheless recommended that the

motions be denied without prejudice and this case be stayed in deference to the pending capital murder prosecution in which the same issues could be presented.

**Background Facts**

Detective Montenegro states in a declaration made pursuant to 28 U.S.C. § 1746 that he was assigned to investigate a shooting that left two people dead in Dallas, Texas in September 2013.  Plaintiff was a suspect, and he was apprehended in Shreveport, Louisiana. Plaintiff was jailed at CCC.

Caddo Sheriff's investigator Michael Escude writes in a statement made under Section 1746 that detectives came to the jail, and Plaintiff refused to give a DNA sample without a warrant.  Detective Montenegro testifies that local law enforcement in Shreveport obtained a search warrant for the collection of buccal swabs (DNA sample).  A copy of the search warrant is attached to Plaintiff's complaint.  Detective Montenegro testifies that he and several other officers then met with Plaintiff on September 26, 2013 at CCC.

Plaintiff alleges in his complaint that Detective Montenegro told him he had returned to get a sample of DNA, but Plaintiff said he was not giving it up without his lawyer present. Plaintiff alleges that Deputy Cory Newton then put a Taser in Plaintiff's back and forced him to submit to the search.  Plaintiff complains that his DNA and fingerprints were taken illegally because the CCC officials did not check the warrant and Newton used violent force to make Plaintiff comply.  Plaintiff accuses Montenegro of coming to the jail with a "fake warrant" and taking his DNA and fingerprints illegally.  Plaintiff stated in one of his prison kites that he had proof that the warrant was not signed by a judge of the local state court.

Detective Montenegro states that Plaintiff was asked to allow a cheek swab, but Plaintiff pushed a table and pinned Montenegro and another Dallas detective to the wall. Other officers then restrained Plaintiff, and he permitted his cheek to be swabbed.

Investigator Evans states that she had the Emergency Response Team ("ERT") on call in case Plaintiff refused to give his DNA, which detainees occasionally do, and she called the ERT when the problem arose.  She and Escude state that they left Plaintiff with the ERT after the members arrived.

Deputy Newton, who says he was aware of the pending charges and that a search warrant for a DNA sample had issued, states that he "did not deploy or use my taser to retrieve DNA or fingerprints from Patrick Russell."  He also says that he did not see any other officer use a Taser on Plaintiff, and he denies using any form of physical force to obtain DNA or fingerprints.

An incident report, written by a deputy who is not named as a defendant, states that Plaintiff was shown the search warrant, and it was explained to him several times, but Plaintiff still refused to comply.  Plaintiff kept demanding a lawyer, and he said his rights were being violated.  According to the report, one of the officers attempted to obtain fingerprints, but Plaintiff balled up his hand into a fist and tucked his arms into his body. The author of the report, who Escude says is an ERT member, then entered the room and took over the situation.  He wrote in the report that he "inserted my MEB between inmate Russell's left arm and his torso" and then "secured the long end of my MEB with my right hand and applied pressure to the top of inmate Russell's left forearm."  Investigator Escude

explains that an MEB is a police baton that does not have any type of "tasing" capabilities. He also recalls that an ERT member applied pressure with an MEB to get Plaintiff to un-ball his hands.

**Analysis**

A claim under Section 1983, to the extent a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, is generally precluded by Heck v. Humphrey, 114 S.Ct. 2364 (1994). The prisoner is not allowed to seek Section 1983 relief unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 114 S.Ct. at 2372.

"Thus, when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. Heck is most often applied to claims for damages, but its principles also preclude claims for injunctive or declaratory relied that attack a conviction or sentence. Summers v. Eidson, 206 Fed. Appx. 321 (5th Cir. 2006) (Heck "applies to injunctive as well as monetary relief"); Shaw v. Harris, 116 Fed. Appx. 499, 500 (5th Cir. 2004) (same).

Detective Montenegro states that Plaintiff is now under indictment for capital murder in Texas, but there has not yet been a trial. Plaintiff's criminal charge is apparently still

pending as of this writing, so <u>Heck</u> is not directly applicable; it does not bar an action that would impugn an anticipated future conviction.  <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1098 (2007).  But this does not mean the federal court should move forward with such cases filed by pretrial detainees.  <u>Wallace</u> states that if a plaintiff files a claim, before he has been convicted, related to rulings that will likely be made in a pending criminal prosecution, it is within the power of the district court, in accord with common practice, to stay the civil action until the criminal case is ended.  If the plaintiff is ultimately convicted, and the civil suit would impugn that conviction, <u>Heck</u> will require dismissal.  Otherwise, the civil action may proceed absent some other bar to suit.  <u>Wallace</u>, 127 S.Ct. at 1098.

Even before <u>Wallace</u>, the Fifth Circuit held that a stay was appropriate when a Section 1983 case attacks an arrest, search, or seizure in a manner that could affect the validity of a decision in the criminal case.  The prisoner in <u>Mackey v. Dickson</u>, 47 F.3d 744 (5th Cir. 1995) alleged an unreasonable search and seizure claim related to his arrests that were followed by indictment in state court on drug charges.  Even though the record did not clearly reflect that a successful attack on the lawfulness of the prisoner's arrests would implicate the validity of his confinement on the state charges, the Fifth Circuit stated that the district court "may—indeed should—stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."  <u>Id</u>.

That is the situation here.  It may be that the DNA and fingerprint evidence are not important in the criminal case, but they may be critical evidence and could be the subject of

a motion to suppress or other proceedings in the state court prosecution. The relationship between the evidence that was gathered in Caddo Parish and the Texas prosecution is not determinable on the current record, but the two are definitely linked.

The undersigned is reluctant to address the merits of the Section 1983 claims, which are presented on motions that are unopposed by the unrepresented prisoner-plaintiff, when the same issues might come before the Texas state court in a capital criminal trial. A ruling by the federal court on the merits of the Section 1983 claims could give rise to estoppel arguments or other issues that might interfere with the ability of the Texas criminal court system to fully and fairly address any constitutional claims that arise in the prosecution. The best exercise of this court's discretion in these circumstances is to stay this case so that any issues regarding the constitutionality or admissibility of the DNA evidence and fingerprints can be addressed by the Texas courts in the first instance. Capital cases are complicated enough without burdening the state court with having to address the possible impact of a related federal court ruling.

If this recommendation is adopted, this case will remain closed until such time as Plaintiff might file a motion to lift stay after the completion of the criminal proceedings. He will, if he files such a motion, have to show that the litigation of the claims presented in this case would not run afoul of Heck or that the Heck conditions (conviction reversed or set aside) have been met. That may be quite some time, if ever, so the motions for summary judgment should be denied without prejudice for administrative purposes. In the event the

case is ever reopened, the motions will be placed back on the docket for decision on the merits.

Accordingly,

**IT IS RECOMMENDED** that **all claims in this case be stayed** pending resolution of the criminal prosecution of Plaintiff and that **this case be administratively closed**.

**IT IS FURTHER RECOMMENDED**, for administrative reasons, that the **Motions for Summary Judgment (Docs. 47, 49, and 50)** be **denied without prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of August, 2016.

Mark L. Hornsby
U.S. Magistrate Judge